2014 UT App 64

**BMBT, LLC, Plaintiff and Appellant,**

v.

**Christopher L. MILLER; Gae O. Miller; Secure Mechanical, Inc.; and Alii, LLC, Defendants and Appellees.**

**No. 20130272–CA.**

Court of Appeals of Utah.

March 20, 2014.

Randall T. Todd and Blake S. Atkin, Salt Lake City, Attorneys for Appellant.

Stanley S. Adams, Salt Lake City, Attorney for Appellees.

Christopher L. Miller and Gae O. Miller, Harold L. Reiser, Salt Lake City, and Victor P. Copeland, Salt Lake City, Attorneys for Appellee Secure Mechanical, Inc.

Marc L. Turman, Salt Lake City, Attorney for Appellee Alii, LLC.

Judge JAMES Z. DAVIS authored this Memorandum Decision, in which Judge JOHN A. PEARCE concurred. Judge J. FREDERIC VOROS JR. dissented, with opinion.

Memorandum Decision

DAVIS, Judge:

¶ 1 BMBT, LLC challenges the trial court's ruling granting Defendants' rule 12(b)(6) motion to dismiss for failure to state a claim. *See* Utah R. Civ. P. 12(b)(6). We affirm.

¶ 2 On December 1, 2003, Defendants Christopher L. Miller and Gae O. Miller executed a promissory note (the Note) in favor of BMBT as consideration for a $60,000 loan. As security for the loan, the Millers granted BMBT a "security interest" in certain property located in Lehi, Utah (the Property). On the same day, the Millers signed a quitclaim deed (the Deed) in favor of BMBT, purporting to quitclaim their interest to certain property to be described in an attached document. The first page of the Note was attached to the Deed and included a descrip-

tion of the Property.[1] BMBT asserts that the Millers later sold the Property, first to Secure Mechanical, Inc. and then to Alii, LLC, companies belonging to the Millers' business partners.

¶3 On August 31, 2009, BMBT filed a Complaint against the Millers, Secure Mechanical, and Alii, seeking to quiet title to the Property. As the case proceeded to trial, Secure Mechanical moved to bifurcate and conduct a separate trial on the issue of whether the Deed and the Note conveyed title to BMBT or merely granted BMBT a mortgage in the Property. At the hearing on the motion, the trial court expressed its opinion that the Deed and the Note created a mortgage rather than conveying title and suggested that a motion to dismiss and a motion to amend the complaint might be in order. Defendants immediately moved to dismiss, and BMBT moved for leave to amend.

¶4 The trial court dismissed the quiet title claim with prejudice and denied BMBT's motion for leave to amend. BMBT appeals. "A trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint for lack of a remedy is a question of law that we review for correctness, giving no deference to the trial court's ruling." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶9, 104 P.3d 1226.

¶5 BMBT first argues that the trial court erred in considering the Deed and the Note without converting Defendants' rule 12(b)(6) motion into a motion for summary judgment. "If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." Utah R. Civ. P. 12(b). When a rule 12(b)(6) motion is so converted, the trial court must give the parties a reasonable opportunity to present evidence in accordance with rule 56 of the Utah Rules of Civil Procedure in order to determine whether the motion can be granted as a matter of law. *See id. See generally id.* R. 56.

¶6 Generally, it is reversible error for a trial court to consider and rely on matters outside the pleadings without converting the rule 12(b)(6) motion to a motion for summary judgment. *Oakwood Vill.*, 2004 UT 101, ¶12, 104 P.3d 1226. However, our supreme court has held that it is not error for the trial court to consider documents that are "referred to in the complaint and [are] central to the plaintiff's claim," regardless of whether such documents were actually included with the complaint. *Id.* ¶13 (citation and internal quotation marks omitted). "[I]f the rule were otherwise," the supreme court explained, "a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* (citation and internal quotation marks omitted). Federal courts applying rule 12(d) of the Federal Rules of Civil Procedure, which is substantively identical to the above-quoted provision found in rule 12(b) of the Utah Rules of Civil Procedure, *compare* Fed.R.Civ.P. 12(d), *with* Utah R. Civ. P. 12(b), have also held that "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir.2003); *see also Grant v. Aurora Loan Servs., Inc.*, 736 F.Supp.2d 1257, 1263–64 (C.D.Cal.2010) (collecting federal cases that have taken judicial notice of trust deeds and other public records in ruling on motions to dismiss).

¶7 In this case, BMBT sought to quiet title to the disputed Property but failed to attach the Deed, which formed the basis of its quiet title claim. Despite BMBT's failure to explicitly reference the Deed in its complaint, we agree with Defendants that the Deed was fairly considered in conjunction with the rule 12(b)(6) motion because reference to the Deed was implicit in BMBT's claim of title and the Deed was central to that claim. Furthermore, even assuming that the Note could not fairly be treated as having been referenced by the complaint and being central to BMBT's claim,[2] we agree

---

**1.** Both the Deed and the Note were recorded in Utah County on November 1, 2006.

**2.** Although the first page of the Note was attached to the Deed to provide the description of the Property referenced in the Note, the Note in

with Defendants that the trial court could take judicial notice of the Note as a public record and properly consider it in ruling on the motion to dismiss.[3]  Accordingly, we conclude that the trial court did not err in declining to convert Defendants' motion to dismiss to a motion for summary judgment.

¶ 8 BMBT next asserts that the trial court erred in granting Defendants' motion to dismiss.  The Utah Quiet Title Act precludes the holder of a mortgage from maintaining a quiet title action on the basis of the mortgage: "A mortgage of real property may not be considered a conveyance which would enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale." Utah Code Ann. § 78B–6–1310 (LexisNexis 2012).  However, BMBT maintains that the Deed and the Note are ambiguous as to whether the parties intended to grant BMBT a present possessory interest in the Property or only a mortgage.

¶ 9 Utah subscribes to the lien theory of mortgages, which holds "that a mortgage ... does not vest title in the mortgagee, but merely creates a lien in his favor." *Bybee v. Stuart*, 112 Utah 462, 189 P.2d 118, 122–23 (1948).  Thus, "[i]t is possible for a party to transfer a ... deed without intending to convey the property." *Winegar v. Froerer Corp.*, 813 P.2d 104, 110 (Utah 1991).  Accordingly, "parol evidence is admissible in equity to show that a deed, although absolute on its face, was intended as a mortgage." *Id.*  Generally, this is an issue for the fact-finder, who should examine a number of factors in determining the parties' intent. *Hansen v. Kohler*, 550 P.2d 186, 189 (Utah 1976).

¶ 10 However, "where ... there is a written agreement between the parties, contemporaneous with the deed, which shows the deed to have been given for security purposes, the court will look to the real transaction, and treat it as a mortgage." *Bybee*, 189 P.2d at 122.  Where the deed, read in conjunction with the contemporaneous document is unambiguous, resort to parol

evidence is unnecessary.  *See Glauser Storage, LLC v. Smedley*, 2001 UT App 141, ¶¶ 21–23, 27 P.3d 565 (excluding parol evidence tending to indicate that a transaction was intended as a mortgage where a contemporaneous agreement unambiguously indicated that the parties intended to convey a present possessory interest rather than a mortgage).  The Note was signed on the same day as the Deed, and the first page of the Note was attached to the Deed to provide the description of the Property.  The Note unambiguously identified the Property as security for the loan from BMBT to the Millers and even indicated the parties' intent for the Millers "to actively engage in selling the [P]roperty during the time of [the] contract" to satisfy the Note. *Cf. Bybee*, 189 P.2d at 122 (holding that the terms of a contemporaneous contract giving the grantor the right to sell the land unambiguously indicated the parties' intent for ownership to remain with the grantor).  We agree with the trial court that, read together, the Deed and the Note unambiguously give BMBT a mortgage in the Property.  Because a quiet title claim cannot be based on a mortgage, Utah Code Ann. § 78B–6–1310, the trial court correctly dismissed BMBT's quiet title claim.

¶ 11 We conclude that the trial court was not required to convert Defendants' motion to dismiss to a motion for summary judgment and that the trial court correctly granted Defendants' motion to dismiss.  Accordingly, we affirm.

VOROS, Judge (dissenting):

¶ 12 I respectfully dissent.  On November 2, 2012, counsel for BMBT walked into a hearing on Defendants' motion to bifurcate and walked out having had their complaint dismissed with prejudice.  Defendants' oral motion to dismiss was granted, and BMBT's oral motion to amend was denied.  The ruling was based on the trial court's conclusion that the underlying documents created a security interest in the Property.  The trial court acted decisively and perhaps—ulti-

---

its entirety was not incorporated by reference as part of the Deed. Though it was a contemporaneous document, it remained separate from the Deed and, standing alone, was not central to BMBT's claim of title.

3. The trial court's consideration of the Deed could also be justified by this exception.

mately—correctly. But in my judgment the dismissal was premature because without resort to extrinsic evidence the documents are ambiguous.

¶ 13 Neither document before the court was in the form of a mortgage or trust deed. Each was produced from a printed form that the parties adapted, with strikeouts and insertions, to a use other than its intended use. The resulting documents are imprecise and confusing. One document is titled "Quitclaim Deed (Two Individuals to ~~Husband and Wife~~)." It states:

> [The Millers] do hereby remise, release, quitclaim, grant and convey unto BMBT, LLC, ~~and~~ a Limited Liability Company, ~~Husband and Wife,~~ as sole ~~joint~~ tenants with rights of survivorship, hereinafter "Grantees," the following lands....

The other document is titled "Promissory Note And Security Agreement." Its boilerplate language contemplates a transaction involving personal property. It states, for example:

> As (Collateral") [sic] Maker here by [sic] authorizes Holder to file a UCC financing Statement in the appropriate state or states to protect this security interest. Holder has a right to foreclose and take immediate possession of part or all of the Collateral immediately upon any default of this note and have all other rights provided for pursuant to section nine of the Utah Uniform Commercial Code.

¶ 14 BMBT seeks the opportunity to present extrinsic evidence of the parties' intent. "Before the [trial] court may consider extrinsic evidence of the parties' intent ..., it must first conclude that the contract is facially ambiguous." *Wilson v. Johnson*, 2010 UT App 137, ¶ 8, 234 P.3d 1156 (citing *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269). A contract provision is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (citations and internal quotation marks omitted). To determine if a contract is facially ambiguous, "a judge [must] first review relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity." *Id.* ¶ 31. Further, when two agreements are "executed 'substantially contemporaneously' and are clearly interrelated," they must be construed as a whole and harmonized if possible. *Winegar v. Froerer Corp.*, 813 P.2d 104, 109 (Utah 1991) (quoting *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987))

¶ 15 These two documents are on their faces inconsistent, and neither purports to be a mortgage or trust deed. The Quitclaim Deed describes an absolute conveyance; the Promissory Note And Security Agreement describes a security agreement governed by the Uniform Commercial Code. I therefore cannot agree that they are unambiguous.

¶ 16 I do agree that Defendants' interpretation of these documents is "arguably more reasonable" than BMBT's. *See Holladay Bank & Trust v. Gunnison Valley Bank*, 2014 UT App 17, ¶ 18, 319 P.3d 747. But that does not mean that, read together, the documents are unambiguous. "So long as competing interpretations are reasonably based on the natural and ordinary meaning of the terms of the contract and generally consistent with interpretive canons, both fall within the permissible spectrum of reasonability that courts use to determine ambiguity." *Id.* True, "equitable mortgages are generally found when what appears to be an absolute conveyance on its face was actually intended as a mortgage." *Burkhardt v. Bailey*, 260 Mich.App. 636, 680 N.W.2d 453, 465 (2004). But here the documents are not so clear that extrinsic evidence need not even be considered in determining what "was actually intended." *See id.*

¶ 17 Moreover, BMBT makes another, and subtler, argument. It observes that the Promissory Note And Security Agreement provides that the entire principal was due "in a single lump sum on or before March 1st 2004." The Note further provides that upon default, BMBT "has a right to foreclose and take immediate possession" of the Property. Although the documents are both dated December 1, 2003, they were not recorded until November 1, 2006–after the Note's due date. BMBT thus argues that the "intent of the parties could be found to be" that BMBT "was entitled to title and possession of the property" upon the Millers' default, that the Millers did default, and that BMBT then

recorded the Deed as authorized by the Promissory Note And Security Agreement. I cannot see how this theoretical possibility may be excluded without resort to extrinsic evidence. No court has considered whether this explanation enjoys factual support or, if it does, whether BMBT acted within its rights.

¶ 18 In sum, I agree with BMBT that the trial court erred in granting Defendants' oral motion to dismiss. I would reverse the judgment of dismissal and let the matter proceed at least to the summary judgment stage.